PEOPLE v BUCK

PEOPLE v SEGO

PEOPLE v GEICK

PEOPLE v HOLCOMB

Docket Nos. 119249, 120176, 121340, 123031. Submitted May 20, 1992, at Lansing. Decided December 8, 1991, at 9:40 A.M. Leave to appeal sought in *Buck* and *Sego*. Leave to appeal denied in *Geick* and *Holcomb*, 442 Mich 858.

Following a joint jury trial in the Genesee Circuit Court, Donald R. Freeman, J., Norman Buck, Jr., and Norman W. Sego were convicted of first-degree murder, conspiracy to commit first-degree murder, and possession of a firearm during the commission of a felony; Franklin C. Geick was convicted of voluntary manslaughter and felony-firearm. Randall L. Holcomb, a minor, was tried as an adult in the same proceedings before a different jury and was convicted of second-degree murder, conspiracy to commit second-degree murder, and felony-firearm. There were proofs supporting the prosecution's theory that the defendants agreed to kill defendant Buck's father and went together to the house where the senior Buck was located and that Holcomb then shot him. Each defendant appealed, and the appeals were consolidated.

The Court of Appeals *held:*

1. There was sufficient evidence to support Buck's convictions of first-degree murder and felony-firearm on a theory of aiding and abetting. There was also sufficient evidence to support his conviction of conspiracy to commit first-degree murder.

2. The trial court properly exercised its discretion in refusing to permit Buck's counsel to make an opening statement, counsel having reserved his opening statement until the conclusion

REFERENCES

Am Jur 2d, Criminal Law § 171; Homicide §§ 27 *et seq.*, 543; Juvenile Courts and Delinquent and Dependent Children § 19; Trial § 531; Witnesses § 867.

Time as of which defense counsel in criminal case may make opening statement. 93 ALR2d 951.

Homicide by juvenile as within jurisdiction of a juvenile court. 48 ALR2d 663.

of the prosecution's proofs, at which time counsel indicated an intent neither to call witnesses nor present any evidence. Under these circumstances, there was no need for an opening statement, and no prejudice resulted from its lack.

3. The failure of both Buck and Sego to object at trial to the prosecution's closing arguments precludes appellate review, there being no showing that a failure to review that question would result in a miscarriage of justice.

4. Because there was no request for a jury instruction relating to accomplice testimony, no objection to the court's failure to give such an instruction, and no showing that the failure to review the question will result in a miscarriage of justice, the failure of the court to give that instruction does not require reversal.

5. The question whether Sego's convictions are against the great weight of the evidence is not preserved for appellate review, no timely motion for a new trial having been filed.

6. There was sufficient evidence to support Sego's convictions of first-degree murder and conspiracy to commit first-degree murder. However, there was insufficient evidence to convict Sego, either as a principal or an aider and abettor, of felony-firearm.

7. Although the proofs do not support Geick's conviction of voluntary manslaughter, they clearly establish that he aided and abetted the commission of the premeditated murder of the victim. His conviction of voluntary manslaughter, therefore, need not be set aside. Because a jury can convict an aider and abettor of a lesser crime than the principal, and in light of the defense request for an instruction concerning voluntary manslaughter, Geick's conviction of voluntary manslaughter is affirmed.

8. The trial court's instruction concerning the intent necessary to convict an aider and abettor was proper. Despite the 1990 amendment of the Criminal Jury Instruction relating to the intent of an aider and abettor, the Court of Appeals continues to recognize as a correct statement of the law that an aider and abettor either must have intended the commission of the crime or must have known that the principal intended the commission of the crime at the time of giving aid, encouragement, or inducement.

9. The trial court erred in calculating the number of days to which Geick was entitled as credit against his sentence. On remand, the court must credit Geick with the additional seven-day credit to which he is entitled.

10. Holcomb's conviction of and sentence for conspiracy to

commit second-degree murder must be vacated, because such an offense cannot logically exist.

11. Holcomb's conviction of and sentence for felony-firearm must be vacated, because felony-firearm is not one of the enumerated crimes in the statute permitting automatic waiver of certain juveniles to circuit court. Therefore, the circuit court lacked jurisdiction to try Holcomb on that charge.

12. The trial court did not clearly err in determining that it was in the best interests of Holcomb and the public that he be sentenced as an adult. Further, the court did not abuse its discretion in its scoring of the offense variables.

Affirmed in part, reversed in part, and remanded.

1. Criminal Law — Trial — Opening Statements.

It is not an abuse of discretion for a trial court to refuse a criminal defense counsel the opportunity to make an opening statement where counsel reserved the right to make an opening statement until the close of the prosecution's case, but, when the prosecution rested, indicated an intent to call no witnesses and to present no evidence.

2. Criminal Law — Jury Instructions — Accomplice Testimony.

A trial court's failure to give sua sponte a cautionary instruction regarding accomplice testimony is not error requiring reversal unless the issue of the accomplice's credibility is closely drawn.

3. Homicide — Voluntary Manslaughter — Murder — Jury Instructions.

A jury verdict of voluntary manslaughter need not be set aside, although the evidence clearly supports a finding of murder under a theory of aiding and abetting and the principal was convicted of murder, where the defendant requests an instruction concerning voluntary manslaughter.

4. Criminal Law — Aiding and Abetting — Intent.

The intent required for conviction as an aider and abettor may be satisfied by showing that the defendant either intended commission of the crime or knew that the principal intended commission of the crime at the time the aid was given.

5. Criminal Law — Conspiracy to Commit Second-Degree Murder.

Conspiracy to commit second-degree murder is not a criminal offense, because no such offense can logically exist.

6. Criminal Law — Juveniles — Circuit Courts — Jurisdiction.

A circuit court lacks jurisdiction to try a juvenile on a charge of possession of a firearm during the commission of a felony in the

absence of a waiver of jurisdiction by the juvenile division of the probate court, even if the circuit court has acquired jurisdiction to try the juvenile on the underlying felony pursuant to the statute permitting automatic waiver for certain felonies (MCL 600.606, 712A.2[a]; MSA 27A.606, 27.3178[598.2][a]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Shelley R. Spivack,* for defendant Holcomb.

*Michael J. Breczinski,* for defendant Sego.

*Douglas R. Mullkoff,* for defendant Buck.

State Appellate Defender (by *P. E. Bennett*), for defendant Geick.

Before: DOCTOROFF, C.J., and JANSEN and CORRIGAN, JJ.

PER CURIAM. Defendants Buck, Sego, and Geick were convicted after a trial by jury in the Genesee Circuit Court of various offenses, all related to homicide. Defendant Holcomb, a juvenile, was also convicted of several offenses arising out of the same incident, although he had a separate jury hear his case. All defendants bring their appeals as of right, arguing a host of issues that will be addressed seriatim. We affirm in part, reverse in part, and remand to the trial court.

Defendants' convictions arise out of an incident that occurred in a home in Flint where Norman Buck, Sr., was shot to death with a 12-gauge shotgun. The victim was the father of defendant Norman Buck, Jr. There was substantial testimony admitted at trial indicating that the victim

had a reputation for violence and abusive behavior, about which all the defendants had some knowledge. During the night of November 6 and early morning hours of November 7, 1988, the victim allegedly made repeated threats and assaults in the presence of the defendants at the home where he would eventually be gunned down.

The details of the incident will become apparent throughout the text of this opinion. However, at approximately 2:00 A.M. on November 7, 1988, the victim was shot three times by defendant Holcomb, while the remaining three defendants watched. Defendants Holcomb, Buck, and Sego immediately were charged with one count of first-degree murder, MCL 750.316; MSA 28.548, one count of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), and conspiracy to commit first-degree murder, MCL 750.157a; MSA 28.354(1); MCL 750.316; MSA 28.548. Shortly thereafter, defendant Geick was charged with the same offenses.

Defendant Buck was convicted of first-degree murder, felony-firearm, and conspiracy to commit first-degree murder. He was sentenced to serve life in prison for the murder conviction, two years for the felony-firearm conviction, and thirty to sixty years for the conspiracy conviction. We affirm all of defendant Buck's convictions. Docket No. 119249.

Defendant Sego was convicted of first-degree murder, felony-firearm, and conspiracy to commit first-degree murder. He was sentenced to life in prison for the murder conviction, two years for the felony-firearm conviction, and twenty-five to forty years for the conspiracy conviction. We affirm defendant Sego's convictions of first-degree murder and conspiracy to commit first-degree murder, but

vacate his conviction of and sentence for felony-firearm. Docket No. 120176.

Defendant Geick was convicted of voluntary manslaughter, MCL 750.321; MSA 28.553, and felony-firearm, but was acquitted of the conspiracy charge. He was sentenced to serve ten to fifteen years for the manslaughter conviction and two years for the felony-firearm conviction. We affirm defendant Geick's convictions, but remand for adjustment of his sentence to reflect the proper amount of credit for time served. Docket No. 121340.

Defendant Holcomb was convicted by a separate jury of second-degree murder, MCL 750.317; MSA 28.549, felony-firearm, and conspiracy to commit second-degree murder, MCL 750.157a; MSA 28.354(1); MCL 750.317; MSA 28.549. Following a hearing pursuant to the Juvenile Code, the court determined that Holcomb should be sentenced as an adult. He was sentenced to serve twenty-two to forty years for the murder conviction, two years for the felony-firearm conviction, and twenty-two to forty years for the conspiracy conviction. We affirm defendant Holcomb's second-degree murder conviction, but vacate his felony-firearm and conspiracy convictions. Docket No. 123031.

### BUCK

Defendant Buck raises four issues on appeal, none of which we find warrants reversal. Buck first argues that there was insufficient evidence to support any of his convictions. We disagree.

Buck was convicted of first-degree murder, which requires that the prosecution prove, beyond a reasonable doubt, that the killing was intentional, deliberate, and premeditated. *People v Passeno,* 195 Mich App 91, 100; 489 NW2d 152 (1992).

Premeditation and deliberation require sufficient time for the defendant to take a second look. *Id.* The premeditation and deliberation elements may be inferred from the surrounding circumstances, including the prior relationship of the parties, the defendant's actions before the killing, the circumstances surrounding the killing itself, and the defendant's conduct after the killing. *People v Schollaert,* 194 Mich App 158, 170; 486 NW2d 312 (1992).

In the case at bar, the evidence clearly indicated that Buck did not fire the fatal shots. Therefore, Buck's conviction must have resulted from the jury's conclusion that Buck aided and abetted the others in the commission of the murder. To find a defendant guilty on an aiding and abetting theory, the prosecution must prove that (1) a crime was committed either by the defendant or another, (2) the defendant performed acts or gave encouragement that aided or assisted in the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave the aid or encouragement. *People v Spearman,* 195 Mich App 434, 441; 491 NW2d 606 (1992). All forms of assistance are included within the aiding and abetting theory. *People v Usher,* 196 Mich App 228; 492 NW2d 786 (1992). To be convicted of aiding and abetting first-degree murder, the defendant must have had the intent to kill or have given the aid knowing the principal possessed the intent to kill. *Id.*

In reviewing a claim of insufficient evidence, this Court examines the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact reasonably could conclude that all the elements of the charged offense have been proven beyond a reasonable doubt. *People v*

*Hampton,* 407 Mich 354, 368; 285 NW2d 284
(1979), cert den sub nom *Michigan v Hampton,* 449
US 885 (1980); *People v Malone,* 193 Mich App
366, 372; 483 NW2d 470 (1992). Our review of the
evidence persuades us that a rational trier of fact
reasonably could conclude that Buck aided and
abetted the commission of first-degree murder in
this case.

There was testimony presented that Buck went
with defendants Sego, Geick, and others to get the
gun that ultimately was used to kill the victim.
Further, there was testimony indicating that
Buck, while in the car on the way to the house
where the victim was killed, stated: "My dad
thinks he is going to come over and shoot us up, I
guess I can shoot him back too." When the men
were on their way to the house, Buck loaded and
unloaded the weapon. In addition, Buck and defen-
dant Holcomb discussed who should do the shoot-
ing, whereupon Buck suggested that Holcomb do it
because he was a juvenile and would get off with a
lighter sentence.

The testimony also revealed a plot by defendants
to make the shooting look like self-defense. To this
end, a man named Kevin Cameron acquired a
large knife that was wiped clean of fingerprints
and placed in the victim's hand after the victim
was shot. The evidence indicated that Buck knew
of the plan to place the knife in his father's hand
and cautioned others not to touch the knife after it
was wiped clean of fingerprints. Considering this
evidence in a light most favorable to the prosecu-
tion, we are convinced that a rational trier of fact
could conclude that Buck aided and abetted first-
degree murder.

We are also persuaded that the evidence articu-
lated above was sufficient to support a conviction
of conspiracy to commit first-degree murder. A

conspiracy is a mutual agreement between two or more individuals to commit a criminal act or to accomplish a legal act through criminal means. *People v Cotton,* 191 Mich App 377, 392; 478 NW2d 681 (1991). The essence of the conspiracy is the agreement itself, and it is sufficient if the acts of the parties establish the agreement. *Id.* at 393. The crime is complete when the agreement is made, whether or not some overt act is taken in order to further the conspiracy. *Id.* To prove conspiracy to commit murder, it must be demonstrated that each conspirator had the requisite intent to commit the murder. *People v Hamp,* 110 Mich App 92, 103; 312 NW2d 175 (1981). The prosecution must demonstrate that the conspirators deliberated and planned the crime with the intent to kill the victim. *Id.*

In the instant case, the evidence introduced at trial indicating Buck's involvement in the plot from the time the shotgun was acquired to the time the knife was placed in his father's hand after the shooting persuades us that there was sufficient evidence to convict Buck of conspiracy to commit first-degree murder.

We similarly reject Buck's contention that there was insufficient evidence to convict him of felony-firearm. Conviction of felony-firearm requires proof that the defendant possessed or carried a firearm during the commission or attempt to commit a felony. *Passeno, supra* at 97. In *People v Johnson,* 411 Mich 50; 303 NW2d 442 (1981), our Supreme Court stated that in order to sustain a conviction of aiding and abetting felony-firearm, "it must be established that the defendant procured, counselled, aided, or abetted and so assisted in obtaining the proscribed possession, or in retaining such possession otherwise obtained." *Id.* at 54.

In the instant case, Buck carried the firearm in

the car after it had been acquired by defendant Geick. In addition, Buck loaded and unloaded the weapon on the return trip to the home where the shooting took place. Under these circumstances, we conclude that there was sufficient evidence to convict Buck of aiding and abetting the possession of a firearm during the commission of a felony.

Buck's next argument is that the trial court denied him due process of law when it refused to allow his defense counsel to make an opening statement. We disagree.

The trial court has discretion to determine what constitutes a fair and proper opening statement. *Guider v Smith,* 157 Mich App 92, 102; 403 NW2d 505 (1987), aff'd on other grounds 431 Mich 559; 431 NW2d 810 (1988). Further, the court may limit the amount of time allotted to each party for its opening statement. MCR 2.507(F). Under MCR 2.507(A), immediately after the opposing party gives an opening statement, or before the presentation of proofs, a party is permitted to give an opening statement. However, the opening statement may be waived with the consent of the court and the opposing party. *Id.*

In the instant case, Buck's counsel chose to reserve his opening statement until the conclusion of the prosecution's proofs. At that time, Buck's counsel indicated that he did not plan to call any witnesses or present any evidence to rebut the prosecution's case. We agree with the trial court that Buck's counsel was not entitled to present an opening statement, because he was not presenting any proofs on which to comment. We further conclude that even if Buck were entitled to have his counsel make an opening statement, no prejudice resulted from the court's ruling. Buck's counsel gave an extensive closing statement during which he was given a full and fair opportunity to

comment on the case and evidence presented. Buck has not demonstrated how the ruling undermined his chance for a fair trial. Accordingly, we decline to reverse Buck's conviction for this reason.

Buck next contends that the prosecutor improperly took advantage of the trial court's evidentiary ruling excluding testimony concerning allegations that the victim molested his daughter and niece. Essentially, Buck claims that the prosecutor used the ruling to misconstrue the victim's past behavior. We disagree.

We first note that Buck does not contend that the court erred in excluding the testimony that would have implied sexual misconduct by the victim. Thus, the focus of Buck's argument is not on the trial court's ruling, but on the prosecutor's comments made during closing argument. Buck made no objection to the statements and did not request a curative instruction. Absent an objection at trial, our review of improper comments by the prosecutor during closing argument is foreclosed unless the prejudicial effect of the comments is so serious that no objection or instruction would cure the prejudice or a miscarriage of justice would result. *Malone, supra,* 193 Mich App 371.

No miscarriage of justice will result from our failure to reverse Buck's convictions because of the comments at issue. The prosecutor merely stated that neither the victim's daughter nor his niece testified to any acts of violence committed against them on the day of the shooting, a fact supported by the testimony. The prosecutor further stated that those witnesses who did testify about violent acts had a motive to exaggerate and the jury should take that into consideration when evaluating their credibility. These statements were permissible comments concerning the evidence pre-

sented at trial, and a curative instruction could have cured any prejudice that may have resulted from the comments.

Buck's final argument is that the trial court erred in failing to give sua sponte a cautionary instruction regarding accomplice testimony. Again, we disagree.

Buck contends that the trial court should have given the jury an instruction based upon CJI2d 5.6. Buck argues that Kevin Cameron was an accomplice and testified at trial, thereby requiring the court to give the instruction. We assume, for the sake of argument, that Cameron was an accomplice, although that fact was not conclusively established, nor was it submitted to the jury pursuant to CJI2d 5.5.

When a defendant does not request a jury instruction, or voice an objection when it is omitted, reversal is not required unless a miscarriage of justice would result. *People v Tucker,* 181 Mich App 246, 256; 448 NW2d 811 (1989). If the omitted instruction is related to the examination of accomplice testimony, the trial court's failure to give the instruction sua sponte will warrant reversal only where the issue of the defendant's guilt is "closely drawn." *Id.* This Court has interpreted the phrase "closely drawn" to include those instances where the trial is a credibility contest between the defendant and the accomplice. *Id.; People v Jensen,* 162 Mich App 171, 188-189; 412 NW2d 681 (1987).

We are not persuaded that the case at bar was a credibility contest between Buck and Cameron. Much of Cameron's testimony was corroborated by Joseph Geick, brother of defendant Franklin Geick. In addition, there was independent corroboration of Cameron's testimony through physical evidence. In short, Buck's conviction came as a result of substantial physical and testimonial evi-

dence independent of the jury's resolution of Cameron's credibility. Given that the issue of guilt was not "closely drawn," the trial court was not obligated to instruct the jury sua sponte regarding the evaluation of accomplice testimony absent a specific request on Buck's behalf.

### SEGO

We now turn to those issues raised by defendant Sego. Sego's first argument is that his convictions were against the great weight of the evidence or were insufficiently supported by the evidence admitted at trial. We decline to address Sego's contention that his convictions were against the great weight of the evidence because he failed to proffer a timely motion for a new trial. *People v Dukes,* 189 Mich App 262, 264; 471 NW2d 651 (1991).

Sego also argues that there was insufficient evidence to support his convictions of first-degree murder, felony-firearm, and conspiracy to commit first-degree murder. We disagree that there was insufficient evidence to convict Sego of first-degree murder and conspiracy, but agree that there was insufficient evidence to support the felony-firearm conviction.

With regard to all of the convictions, we view the evidence in a light most favorable to the prosecution in an effort to determine whether a rational trier of fact could conclude that the essential elements of the crimes were proven beyond a reasonable doubt. *Hampton, supra,* 407 Mich 368; *Malone, supra,* 193 Mich App 372. We are convinced that there was sufficient evidence to convict Sego of first-degree murder. As was the case in our evaluation of Buck's claim, we must conclude that Sego was convicted of the charges on an aiding and abetting theory. Accordingly, the evidence had

to show that Sego aided and abetted the crimes of first-degree murder and felony-firearm.

The evidence showed that Sego was in the car with Buck, Geick, and the others when the weapon was procured. In fact, Cameron testified that both Sego and Buck informed him that it was their intention to kill the victim. Joseph Geick testified that he heard Sego discuss the plan to place the knife in the victim's hand to make the shooting look like self-defense. Further, the evidence showed that after the victim was shot the first time, Sego dragged him back into the house so that Holcomb could shoot him two more times. These facts alone, established by the evidence presented at trial, were sufficient to support a finding of premeditation and deliberation and sustain a conviction of aiding and abetting first-degree murder. See *Spearman, supra,* 195 Mich App 441-442.

We are also convinced that Sego's conspiracy conviction was supported by sufficient evidence. Sego was present when Buck made the statement that he was going to use the shotgun to shoot his father, Sego was involved in the plan to place the knife in the victim's hand, and he took affirmative steps to carry out the plot when he dragged the victim back into the house. These facts are sufficient to allow a reasonable jury to conclude that Sego was part of an agreement to kill the victim. See *Cotton, supra,* 191 Mich App 392-393. Accordingly, we decline to reverse Sego's conviction of conspiracy to commit first-degree murder on the ground that it was unsupported by sufficient evidence.

With regard to Sego's conviction of felony-firearm, we believe that Sego is correct in his assertion that there was insufficient evidence to sustain that conviction, either as a principal or as an aider

and abettor. There was no evidence that Sego possessed or carried the shotgun at any time during the conspiracy or the murder. See *Passeno, supra,* 195 Mich App 97. Similarly, there was no evidence that Sego aided or abetted the acquisition or retention of the shotgun. See *Johnson, supra,* 411 Mich 54. Accordingly, Sego's felony-firearm conviction and two-year sentence is vacated.·

Sego also argues that his convictions must be reversed because of misconduct and improper comments made by the prosecution. We disagree.

Appellate review of prosecutorial misconduct is foreclosed where the defendant fails to object or request a curative instruction, unless the misconduct was so egregious that no objection or curative instruction could have removed the prejudice to the defendant or if manifest injustice would result from our failure to review the claims of misconduct. *People v Mack,* 190 Mich App 7, 19; 475 NW2d 830 (1991). The standard of review is identical where a defendant claims that the prosecutor made improper remarks during trial. See *Malone, supra,* 193 Mich App 371.

We have carefully reviewed all of Sego's allegations of misconduct and hold that an objection or curative instruction could have cured any prejudice that may have developed. No manifest injustice will result from our failure to grant Sego relief in this respect. We note that the most egregious incident of misconduct occurred when the prosecutor told the jury that Sego was guilty of felony-firearm because he dragged the victim back into the house before Holcomb shot him for the second and third times: a clear misstatement of the law in regard to felony-firearm. However, because we have set aside Sego's conviction of felony-firearm, any prejudice or manifest injustice that

may have resulted from the remark is, therefore, removed.

GEICK

Defendant Geick presents four issues for our review, none of which we find sufficient to warrant reversal. Geick's first contention is that his conviction of voluntary manslaughter must be reversed because there was insufficient evidence for a rational trier of fact to conclude that he, or any other defendant, committed voluntary manslaughter. While we agree that there was insufficient evidence to conclude that Geick committed the crime of voluntary manslaughter, we do not agree that the evidentiary deficiency mandates reversal.

Voluntary manslaughter has been described as a homicide "devoid of actions which require unimpassioned calculation for their accomplishment." *People v Moore,* 189 Mich App 315, 320; 472 NW2d 1 (1991). The crime was recently distinguished from murder by our Supreme Court in the following manner:

> Murder and manslaughter are both homicides and share the element of being intentional killings. However, the element of provocation which characterizes the offense of manslaughter separates it from murder. . . .
> The above definition of voluntary manslaughter encompasses several components which comprise the test for voluntary manslaughter: First, the defendant must kill in the heat of passion. Second, the passion must be caused by an adequate provocation. Finally, there cannot be a lapse of time during which a reasonable person could control his passions. [*People v Pouncey,* 437 Mich 382, 388; 471 NW2d 346 (1991).]

In the case at bar, while it is possible that a jury

may have inferred some provocation from the victim's abusive behavior toward the defendants, we can find no evidence indicating that the killing was done in the heat of passion. In fact, our review of the record indicates that the killing was done in a calculated manner with more than ample passage of time for a reasonable person to control whatever passion may have been incited by the victim's violent behavior.

Having concluded that the evidence was insufficient to satisfy the enumerated components of voluntary manslaughter, we must now determine whether Geick's conviction of voluntary manslaughter must be reversed. This appears to be an issue of first impression in this state, although there is some foundational Michigan law upon which we base our conclusion that Geick's conviction may be affirmed.

With respect to Geick, as was the case with defendants Buck and Sego, there was sufficient evidence for a rational trier of fact to conclude that defendants committed first-degree murder and that Geick aided and abetted the principals in the commission of that offense. The testimony revealed that Geick was the one who acquired the shotgun from a friend on the east side of Flint more than two hours before the shooting took place. Geick drove the car to the house and went inside, where he procured the weapon. There was also testimony that Buck made the statement regarding his intention to use the shotgun to kill his father immediately after Geick handed the weapon to him, indicating that Geick knew of the plan to kill the victim and acquired the weapon with that purpose in mind. Cameron testified that he heard Geick and Buck discuss the plans to put the knife in the victim's hand to make the killing look like self-defense. Thus, we are convinced that there was

sufficient evidence for a rational trier of fact to conclude that Geick aided and abetted first-degree murder.

The question becomes whether a defendant's conviction of aiding and abetting a lesser offense that is unsupported by the evidence must be reversed where there is sufficient evidence to conclude that the defendant aided and abetted a greater charged offense. We conclude that the conviction for the lesser offense need not be reversed.

In *People v Folkes,* 71 Mich App 95; 246 NW2d 403 (1976), this Court addressed a similar issue. In *Folkes,* the defendant was convicted of first-degree murder, while a codefendant, charged as an aider and abettor, was convicted of manslaughter. The defendant sought to have his conviction of first-degree murder invalidated because of the disparity in the verdict between himself and his convicted codefendant. This Court concluded that the statute covering aiding and abetting did not require that the principal be convicted of the same offense as the aider and abettor. *Id.* at 97. The Court stated:

> [T]he better rule is that an aider and abettor can be convicted of an offense lower in degree than the offense of which the principal is convicted. [*Id.* at 98.]

In upholding the principal's conviction, this Court recognized the power of a jury to return verdicts that may be inconsistent with the evidence presented at trial and decided that this power should not be restricted. *Id.* at 99 (quoting *People v Chamblis,* 395 Mich 408, 421; 236 NW2d 473 [1975], overruled in part on other grounds by *People v Stephens,* 416 Mich 252; 330 NW2d 675 [1982]); *People v Powell,* 34 Cal 2d 196; 208 P2d 974 (1949).

Foreign jurisdictions have addressed the issue with varying results. See *People v Thompson,* 193 Cal App 2d 620; 14 Cal Rptr 512 (1961), *O'Conner v State,* 272 Ind 460; 399 NE2d 364 (1980); *State v Heald,* 292 A2d 200 (Me, 1972), and *Commonwealth v Steele,* 362 Pa 427; 66 A2d 825 (1949), which upheld convictions of voluntary manslaughter in the absence of one or more elements of that offense; but see *People v Newman,* 360 Ill 226; 195 NE 645 (1935), *Pugh v State,* 114 Ga 16; 39 SE 875 (1901), and *State v Trujillo,* 27 NM 594; 203 P 846 (1921), which reversed convictions of voluntary manslaughter where, despite sufficient evidence to support a conviction of murder, one or more element of voluntary manslaughter was not proven.

The courts that have upheld the convictions of voluntary manslaughter, despite the lack of evidence to support them, reason that a defendant who could have been convicted of murder is not prejudiced by a jury verdict on the lesser crime. *Heald, supra* at 201; *Steele, supra* at 430. We agree with those courts that have upheld a defendant's conviction of voluntary manslaughter where there was sufficient evidence to convict of murder, but insufficient evidence to support the voluntary manslaughter conviction.

We note that some of those states that have shown a tendency to reverse convictions of voluntary manslaughter on the basis of insufficient evidence, notwithstanding the fact that there was enough evidence to convict of a greater crime, have upheld those convictions where the defendant had requested an instruction concerning voluntary manslaughter or had failed to voice an objection when such an instruction was given. See *People v Clements,* 316 Ill 282; 147 NE 99 (1925); *Perkins v State,* 229 Miss 299; 90 So 2d 650 (1956); *State v Crean,* 43 Mont 47; 114 P 603 (1911). In this case,

Geick requested the instruction with regard to voluntary manslaughter, thereby inviting a conviction of that offense. In the past, we have held that a defendant may not allow an error to pass in the trial court, or request an action that may constitute error, and subsequently seek redress in this Court. *People v Potra,* 191 Mich App 503, 512; 479 NW2d 707 (1991); *People v Murry,* 106 Mich App 257, 262; 307 NW2d 464 (1981).

Thus, in light of past decisions by this Court allowing an aider and abettor to be convicted of a lesser crime than the principal, the decisions of the foreign jurisdictions that have addressed this issue, and the request of defense counsel that the instruction concerning voluntary manslaughter be given, we decline to reverse Geick's conviction of voluntary manslaughter.

Geick also argues that the trial court incorrectly instructed the jury with regard to aiding and abetting. Specifically, Geick contends that the court's instruction concerning the element of intent as it relates to aiding and abetting was defective. Geick did not object at the time the instruction was given, or anytime thereafter. Even if we were to conclude that the instruction was erroneously worded, we decline to reverse, because a miscarriage of justice did not result from the instruction. See *People v Harris,* 190 Mich App 652, 660-661; 476 NW2d 767 (1991).

In relation to the aiding and abetting theory, the court instructed the jury as follows:

> All persons who aid or assist another in the commission of a crime are just as liable as if they had directly committed the crime and they may be convicted of the principle [sic] offense as an aider and abettor. But before you can convict, you must be convinced of the following beyond a reasonable doubt:

First, the crime must have been committed either by the Defendant or some other person, and what occurred in the other case involving the other Defendant [Holcomb] is up to the other jury, it is not of your concern.

Second, that the Defendant must have performed acts or given encouragement which aided or assisted in the commission of that crime either before or at the time of the commission of the crime.

And third, that the Defendant must have intended the commission of the crime charged or have known that the other person intended it's [sic] commission at the time of giving that aid or encouragement and inducement.

It is the third element of the instruction that Geick challenges. We are not convinced that the instruction was erroneous.

In June 1990, over one year after the trial in this matter, the committee revised the jury instruction on aiding and abetting with respect to the third element, so that the instruction now reads:

Third, that when the defendant gave [his / her] assistance, [he / she] intended to help another commit the crime. [CJI2d 8.2(4).]

The comments to the jury instruction indicate that the instruction was revised in light of our Supreme Court's decision in *People v Kelly,* 423 Mich 261, 278; 378 NW2d 365 (1985). See committee comments to CJI2d 8.2, p 8-5. The committee further recognized that there are three acceptable views of the requisite intent to sustain a conviction of aiding and abetting. *Id.* at 8-6. As recently as last year, members of the Supreme Court have recognized that the intent necessary to sustain a conviction as an aider and abettor is unsettled and

in need of review by that Court. See *People v Goss,*
437 Mich 1021-1022 (1991) (BOYLE, J., and RILEY,
J., dissenting from the Court's order of peremptory
reversal).

Our review of this issue is further complicated
by recent decisions from this Court that have
characterized the intent requirement as follows:

> To find a defendant guilty on an aiding [and]
> abetting theory, the people must show that . . . (3)
> the defendant intended the commission of the
> crime' or had knowledge that the principal in-
> tended its commission at the time he gave aid or
> encouragement. [*Spearman, supra,* 195 Mich App.]

Thus, although the jury instruction has been
amended, ostensibly to comply with our Supreme
Court's decision in *Kelly,* this Court continues to
recognize that the intent requirement for aiding
and abetting may be satisfied upon a showing that
the defendant *either* intended commission of the
crime *or* knew that the principal intended its
commission at the time the aid was proffered. *Id.*;
see also *Usher, supra,* 196 Mich App 232-233. But
see *People v Zak,* 184 Mich App 1, 13; 457 NW2d
59 (1990). Further, nowhere in *Kelly* did our Su-
preme Court conclude that the instruction con-
cerning aiding and abetting was improper or in-
consistent with the law. Rather, the Court declined
to address the merits of the issue because it was
not preserved by an objection in the trial court.
*Kelly, supra* at 265. Thus, *Kelly* did not compel
any changes in the previous instruction, and the
amendment appears to have been done at the
committee's own undertaking.

It is well settled that the Michigan Criminal
Jury Instructions do not have the official sanction
of our Supreme Court. *People v Petrella,* 424 Mich
221, 277; 380 NW2d 11 (1985). The Court stated

that their use is not required and that courts should carefully examine them for accuracy before resorting to their use. *Id.* On the other hand, this Court and the trial courts of this state are required to follow binding precedent of this Court. Thus, absent some contrary decision by our Supreme Court invalidating the recent holdings of this Court, we must follow those decisions that have recognized with satisfaction the instruction that provides the alternative bases for finding the necessary intent. In this regard, we conclude that the intent requirement for aiding and abetting may be satisfied by establishing that defendant had the intent to commit the crime, or that defendant knew the principal intended its commission when he rendered the assistance.

The jury instruction as given, although arguably inconsistent with the recent revision of the criminal jury instructions, comports with the status of the law as ratified by decisions of this Court that have binding precedential effect under Administrative Order No. 1990-6, 436 Mich lxxxiv and Administrative Order No. 1991-11, 439 Mich cxliv. Accordingly, we decline to reverse Geick's conviction on the ground that the jury was improperly instructed concerning the intent requirement for aiding and abetting a crime.

Even if we were to conclude that the instruction was erroneously worded, Geick's failure to object to the instruction as given waived any claim of error, because there was no miscarriage of justice as a result of the instruction. See *Harris, supra,* 190 Mich App 660-661. Given our conclusion that there was sufficient evidence for a rational trier of fact to conclude that Geick aided and abetted first-degree or second-degree murder, we cannot reasonably conclude that Geick's conviction of voluntary manslaughter was a miscarriage of justice.

Geick also argues, as did Buck, that the trial court erred in failing to give sua sponte the cautionary instruction related to accomplice testimony. Inasmuch as we concluded that the issue of credibility was not closely drawn in relation to Buck, we hold that the court was not obligated to instruct the jury sua sponte in the manner requested on appeal.

Finally, Geick argues that the trial court miscalculated the number of days to which he was entitled as credit against the sentence he received. On appeal, the prosecutor concedes that the court erred. The prosecution agrees that Geick was entitled to 134 days credit, as opposed to the 127 days actually given. Accordingly, we remand this matter to the trial court, which shall credit Geick with seven days against his remaining sentence. In all other respects, Geick's convictions are affirmed.

### HOLCOMB

We now turn to those issues raised by defendant Holcomb on appeal. Holcomb raises five issues, two of which we find meritorious.

Holcomb's first argument is that his conviction of conspiracy to commit second-degree murder must be set aside because no such offense can logically exist. We agree.

In *People v Hammond,* 187 Mich App 105; 466 NW2d 335 (1991), this Court concluded that the offense of conspiracy to commit second-degree murder does not exist and the state has no interest in pursuing a conviction of the nonexistent offense. *Id.* at 106-107. Inasmuch as *Hammond* was released after November 1990, we are bound to follow it pursuant to Administrative Order No. 1990-6. Accordingly, Holcomb's conviction of con-

spiracy to commit second-degree murder and the sentence arising out of that conviction are vacated.

Holcomb also argues that his conviction of felony-firearm must be reversed because the circuit court lacked jurisdiction to convict him of that offense. We agree. Because felony-firearm is not one of the enumerated offenses subject to the automatic waiver statute, Holcomb is correct that the circuit court lacked jurisdiction over him with regard to that charge. See *People v Deans,* 192 Mich App 327, 330; 480 NW2d 334 (1991). Once again, given the fact that *Deans* was released after November 1990, we are obligated to follow the rule of law established pursuant to Administrative Order No. 1990-6. We are cognizant of the fact that this issue is currently before our Supreme Court in *People v Hill* (Supreme Court Docket No. 93406), and *People v Veling* (Supreme Court Docket No. 93321), 440 Mich 888 (1992). However, until such time as our Supreme Court decides the issue, we are bound by *Deans.* Accordingly, we vacate Holcomb's conviction of and sentence for felony-firearm.

Holcomb's next argument is that the trial court erred in deciding to sentence him as an adult under MCL 769.1; MSA 28.1072. We disagree.

Pursuant to MCL 769.1(3); MSA 28.1072(3), a court having jurisdiction over a juvenile must conduct a hearing to determine whether the best interests of the juvenile and the public would be better served by placing the juvenile on probation under the Youth Rehabilitation Services Act, MCL 803.302 *et seq.*; MSA 25.399(51) *et seq.,* or by sentencing the juvenile as an adult offender. In determining the manner in which to sentence the juvenile, the statute obligates the court to consider the juvenile's prior record, the seriousness and circumstances surrounding the offense, whether

the offense is part of a pattern of similar offenses, whether the juvenile's behavior is likely to disrupt the rehabilitation of other juveniles, whether the juvenile's behavior is likely to render him dangerous to the public if released at the age of twenty-one, the prospect of the juvenile's rehabilitation in each of the systems, and the overall interests of the public. *Id.*; *Passeno, supra,* 195 Mich App 102-103.

In reviewing a court's decision to sentence a juvenile under the provisions of this statute, this Court applies a "bifurcated" standard of review. *Id.* at 103. We must first evaluate the sentencing court's findings with regard to each of the enumerated factors under the clearly erroneous standard. *Id.* We then review the ultimate decision to sentence the minor as a juvenile or as an adult to determine whether an abuse of discretion has occurred. *Id.* at 103-104. In reviewing the ultimate decision to sentence the defendant under the juvenile or adult system, we apply the principle of proportionality as established by our Supreme Court in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990).

After a thorough review of the testimony and evidence presented at the sentencing hearing, we conclude that the court's findings of fact survive the clearly erroneous standard of review. The court was sensitive to the specific facts and circumstances surrounding the crimes with which Holcomb was charged and made specific findings based upon the expert testimony presented. We cannot say that any of the findings leave us with a definite and firm conviction that a mistake has been made. See *Passeno, supra,* pp 103-104. We further believe that the court's decision to sentence Holcomb as an adult was proportionate to the offense and the role he played in the murder. Thus, we

affirm the trial court's decision to sentence Holcomb as an adult under the circumstances of this case.

Holcomb also claims that the court improperly scored offense variable three under the guidelines. We disagree.

Appellate review of a court's scoring of the variables related to an offense is very limited. *People v Daniels,* 192 Mich App 658, 674; 482 NW2d 176 (1992). The court has discretion in determining the number of points to be scored, as long as there is evidence on the record to support the score. *Id.* In this case, offense variable three for the second-degree murder conviction addresses the intent of the defendant. Twenty-five points are to be scored where the defendant had the unpremeditated intent to kill, whereas ten points are to be scored where the defendant had the intent to injure or where adequate provocation existed. The court scored the variable at twenty-five points, rather than ten as requested by defendant.

The court's score of twenty-five points for this offense variable was supported by the jury verdict and the evidence on the record. Holcomb admitted that he shot the victim. He further admitted that he fired three shots in the direction of the victim. There was testimony indicating that Holcomb told a number of people that he wanted to kill the victim on the day of the shooting. Holcomb admitted that he and Buck discussed who would do the shooting some time before the incident. Holcomb also admits knowing what he was doing with the weapon when he fired the second and third shots. In view of the substantial evidence of intent and the jury verdict of guilty of second-degree murder, we conclude that the score of twenty-five points was a proper exercise of the court's scoring discretion.

Finally, Holcomb contends that his sentence of twenty-two to forty years was a violation of the proportionality standard imposed in *Milbourn, supra.* We disagree.

The sentence was within the recommended minimum range and is, therefore, presumptively proportionate to the offense and the offender. *People v Vettese,* 195 Mich App 235, 247; 489 NW2d 514 (1992). While we conclude that the sentence is proportionate to the offense and the offender, we nonetheless remand the matter to the sentencing court to allow it to exercise its discretion in sentencing Holcomb in light of our decision to reverse the convictions of conspiracy and felony-firearm.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.