PEOPLE v KING

Docket No. 163102. Submitted February 17, 1995, at Detroit. Decided
May 5, 1995, at 9:05 A.M.

Levurn King, Jr., was convicted by a jury in the Macomb Circuit
Court, Frank E. Jeannette, J., of armed robbery as an aider
and abettor. He appealed by leave granted.

The Court of Appeals *held:*

1. The defendant was not entitled to present a defense of
voluntary intoxication or to a jury instruction regarding such a
defense. Voluntary intoxication is a defense to specific intent
crimes only. Where, as here, prosecution for aiding and abet-
ting the commission of a specific intent crime is based on the
defendant's knowledge that the principal possessed the requi-
site specific intent, voluntary intoxication is not a defense
because such knowledge is only a general intent requirement.

2. The trial court did not abuse its discretion in permitting
the jury to view the scene of the armed robbery. The defendant
was not prejudiced by his absence at the jury view or by the
lack of a cautionary instruction, on the day of the view,
regarding changed weather and lighting conditions. The defen-
dant argued that he wanted to be present at the jury view to
inform the jury about changed conditions; however, on the day
before the jury view, the trial court had given a cautionary
instruction regarding changed conditions before the jury
watched a videotape of the crime scene. From that instruction
and the application of common sense, the jurors could infer
changed conditions.

3. The admission of testimony by the victim's fellow em-
ployee regarding the layout of the crime scene as part of the
prosecution's rebuttal evidence was improper, but it did not
result in manifest injustice to the defendant. Because the
testimony was almost identical to evidence introduced in the
prosecution's case in chief, exclusion of the challenged rebuttal
evidence would not have altered the verdict.

4. The prosecutor did not engage in misconduct during clos-
ing argument in responding to arguments raised by defense
counsel.

Affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Carl J. Marlinga,* Prosecuting Attorney, *Robert J. Berlin,* Chief Appellate Attorney, and *Mark G. Cardellio,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Charles J. Booker*), for the defendant on appeal.

Before: DOCTOROFF, C.J., and SMOLENSKI and R. J. DANHOF,* JJ.

PER CURIAM. A jury convicted defendant of armed robbery, MCL 750.529; MSA 28.797. Defendant received a sentence of two to fifteen years. We granted leave to appeal in this delayed appeal so we could consider whether a voluntary intoxication defense should have been available to defendant. We affirm.

On August 5, 1991, at about 12:30 A.M., two men in a car robbed a Mobil gasoline station in Sterling Heights. The station attendant, Michael Kluk, identified defendant as one of the robbers. Kluk testified that defendant and another man came into the station together. The other man was never identified. After defendant bought a pack of cigarettes and the other man paid for gas, they left. The other man returned a few minutes later, stuffed about fourteen or fifteen cigarette cartons into a tote bag, and ran out the door. Kluk followed the man. When Kluk warned the man that he was being videotaped by cameras, the man pulled out a gun and threatened to kill Kluk if he did not return inside. Kluk went inside and observed the two men alongside a black Camaro. As Kluk was trying to read the license plate number

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

on the Camaro, he saw defendant throw the plate into the car. Defendant then drove the car away, with the other man in the passenger seat.

Officer David Crown of the Warren Police Department noticed a 1980 Chevrolet Monza without a license plate speeding on Eight Mile Road at about 3:45 A.M. Crown identified defendant as the driver. Defendant's driving was reckless and exhibited all the indications of a drunken driver. When Officer Crown pulled the car over, however, defendant did not smell of alcohol and was coherent, and Crown concluded he was not intoxicated. Crown detained defendant for traffic violations and because he fit the description of the robber of the gasoline station. When Crown interviewed defendant at the Warren police station, defendant admitted he was in the area of Fifteen Mile Road and Schoenherr that night. Defendant claimed that he had dropped off a hitchhiker at the corner of Fifteen Mile and Schoenherr, and that after defendant bought cigarettes, the hitchhiker jumped back in the car with cartons of cigarettes and told defendant to get out of there. Defendant let the hitchhiker drive while he drank a bottle of wine.

Defendant's sister, brother, and nephew testified at trial that defendant is an alcoholic and is easily influenced, especially when drunk. Defendant's brother testified that defendant lived in his car in August 1991. Defendant's brother also stated that when he saw defendant earlier in the evening of August 5, 1991, defendant was drunk.

A major issue at trial was how well Kluk, the only eyewitness, could see the event. Conflicting testimony was presented regarding how many panes of glass Kluk had to look through and regarding the presence of obstructions to Kluk's view of the pertinent gasoline pump and of defen-

dant. The trial occurred in late February 1992. The trial court gave a cautionary instruction regarding changed weather and time-of-day conditions before the prosecution showed a videotape of the crime scene. After beginning deliberations the following day, the jury was allowed to view the crime scene over defense counsel's objection. The next day, the jury found defendant guilty of armed robbery.

First, defendant argues that, because aiding and abetting armed robbery is a specific intent crime, he was entitled to receive a jury instruction regarding voluntary intoxication. We disagree.

The elements of an armed robbery are (1) an assault and (2) a felonious taking of property from the victim's person or presence while (3) the defendant is armed with a weapon described in the statute. *People v Allen,* 201 Mich App 98, 100; 505 NW2d 869 (1993). Armed robbery is a specific intent crime for which the prosecutor must establish that the defendant intended to permanently deprive the owner of property. *People v Fordham,* 132 Mich App 70, 75; 346 NW2d 899 (1984), rev'd on other grounds 419 Mich 874 (1984). The defense of intoxication will negate the specific intent element of the crime charged if the degree of intoxication is so great as to render the accused incapable of entertaining the intent. *People v Savoie,* 419 Mich 118, 134; 349 NW2d 139 (1984). Voluntary intoxication is a defense only to a specific intent crime. *People v Langworthy,* 416 Mich 630, 638; 331 NW2d 171 (1982).

If defendant had been charged as the principal in this armed robbery, the defense of intoxication would have been available to him upon a proper showing that he was intoxicated. *Fordham, supra* at 75; *Savoie, supra* at 134; *Langworthy, supra* at 638. However, in *People v Karst,* 138 Mich App

413, 416; 360 NW2d 206 (1984), this Court defined two types of aiding and abetting: (1) where the aider and abettor himself possesses the requisite specific intent for the underlying crime and (2) where the aider and abettor knows that the principal has the requisite intent. *Id.* Voluntary intoxication was held not to negate the latter:

> Where the offense is a specific intent crime, as here, voluntary intoxication of the defendant would be a defense to the first type, aiding and abetting with [specific] intent. However, we agree with the trial court that voluntary intoxication of the defendant is not a defense to the second type, aiding and abetting with knowledge, because this knowledge element is only a general intent, not a specific intent requirement.
> . . . Therefore, notwithstanding that the substantive offense involved herein is a specific intent crime, defendant's voluntary intoxication was not a defense to conviction as an aider and abettor having knowledge of his coparticipants' possession of the requisite specific intent. [138 Mich App 415-416.]

After *Karst,* the Michigan Supreme Court decided *People v Kelly,* 423 Mich 261, 278; 378 NW2d 365 (1985). In *Kelly,* our Supreme Court addressed the jury instruction for aiding and abetting a felony murder. The Supreme Court declined to review the actual instruction because the defendant had failed to preserve that issue for review. *Id.* at 280. Regarding the two types of aiding and abetting, the Supreme Court stated:

> The requisite intent is that necessary to be convicted of the crime as a principal. *Meister v People,* 31 Mich 99 (1875). In this instance, under [*People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980)], it therefore must be shown that the aider

and abettor had the intent to kill, the intent to cause great bodily harm or wantonly and willfully disregarded the likelihood of the natural tendency of his behavior to cause death or great bodily harm. *Aaron,* 409 Mich 733. Further, if the aider and abettor participates in a crime with knowledge of the principal's intent to kill or cause great bodily harm, he is acting with "wanton and willful disregard" sufficient to support a finding of malice under *Aaron.* This result is in accord with numerous decisions reached by the Court of Appeals over a considerable period of time. [423 Mich 278-279.]

Defendant argues that *Kelly* implicitly overrules *Karst.* We disagree.

Unlike this case, *Kelly* involved a general intent crime. In *Kelly,* the Supreme Court addressed the intent of an aider and abettor for the murder in a count of felony murder. Unlike armed robbery, felony murder is not a specific intent crime because it does not require the intent to kill. *In re Robinson,* 180 Mich App 454, 462; 447 NW2d 765 (1989). This Court has applied *Kelly* only to the general intent requirement of felony murder. *People v Flowers,* 191 Mich App 169; 477 NW2d 473 (1991).

Rather than overruling the prior holdings of this Court, *Kelly* states that its result is "in accord with numerous decisions reached by the Court of Appeals." *Id.* at 279. In many of those prior decisions, this Court stated that an aider and abettor can either possess the same intent as the principal or know that the principal possesses that intent. *People v Schaffer,* 129 Mich App 287, 290-291; 341 NW2d 507 (1983); *People v Davenport,* 122 Mich App 159, 164; 332 NW2d 443 (1982); *People v Harris,* 110 Mich App 636, 642-643; 313 NW2d 354 (1981); *People v Wirth,* 87 Mich App 41, 46-47; 273 NW2d 104 (1978).

This Court has previously held that *Kelly* did not overrule the doctrine that the intent requirement for aiding and abetting may be fulfilled if the aider and abettor only had knowledge of the principal's intent. *People v Buck,* 197 Mich App 404, 425; 496 NW2d 321 (1992), rev'd in part on other grounds *People v Holcomb,* 444 Mich 853 (1993). This Court determined that *Kelly* did not address this issue. *Buck, supra* at 425. In the absence of a Supreme Court ruling clarifying the intent required of aiders and abettors, we reaffirm our consistent holding that aiders and abettors can be liable for specific intent crimes if they possess the specific intent required of the principal or if they know that the principal has that intent.

*Karst* is consistent with our holding. The knowledge element is merely a general intent requirement imposed to prevent an innocent participant from becoming an aider and abettor. *Id.* at 416; *People v Watts,* 133 Mich App 80, 83; 348 NW2d 39 (1984). In this case, because defendant was tried for aiding and abetting an armed robbery with knowledge that the principal had the specific intent to rob, he was not entitled to a voluntary intoxication instruction. Contrary to defendant's assertions, voluntary intoxication is not a defense to a general intent crime. *Langworthy, supra* at 641. Because we hold that defendant was not entitled to a jury instruction regarding voluntary intoxication, we will not address whether the evidence supported his intoxication defense.

Next, defendant claims that the trial court abused its discretion in allowing the jury to view the crime scene under dramatically different conditions and without a cautionary instruction regarding changed conditions. Defendant also argues that he was prejudiced because he was not informed of his right to be present at the jury view.

Although defense counsel objected to the jury view, he did not request a cautionary instruction, either before or after the jury went to the scene. Appellate review is thus precluded absent manifest injustice. *People v Phillips*, 61 Mich App 138, 151-152; 232 NW2d 333 (1975).

Permitting the jury to view a crime scene is within the trial court's discretion. MCL 768.28; MSA 28.1051; *People v Mallory*, 421 Mich 229, 245; 365 NW2d 673 (1984), appeal after remand 168 Mich App 255; 423 NW2d 637 (1988). A crime scene properly can be viewed despite changed conditions where the jury has been properly apprised of the changes. *Id.* at 245.

The trial court sent the jurors to the crime scene with a court officer on the afternoon of February 26, 1992. The previous day, the trial court gave a cautionary instruction regarding changed conditions when the jury viewed a videotape of the crime scene. We find no manifest injustice in permitting the jury to view the scene under these circumstances. The trial court had warned the jurors of the changed conditions the previous day. From the cautionary instruction and the application of common sense, the jurors could infer that weather and lighting conditions would be different for a February afternoon and an August evening. *Id.*

Defendant then argues that the trial court's failure to inform him of his right to be present at the jury view denied him an opportunity to assist in his own defense. Defendant did not request to be present at the jury view, and no record was made to indicate whether defendant affirmatively waived this right.

An accused defendant in custody has the fundamental right to be present at every stage of trial where his substantial rights may be affected, in-

cluding a jury view of the crime scene. *Id.* at 247. A defendant may waive his right to be present at a jury view (1) by affirmative consent, (2) by failure to appear at the view when he is at liberty to, or (3) by disorderly or disruptive conduct at trial precluding continuation of the trial in his presence. *Id.* at 248. None of these applies in the instant case.

This Court reviews a criminal defendant's absence from part of a trial to ascertain whether there is any reasonable possibility of prejudice. *People v Woods,* 172 Mich App 476, 480; 432 NW2d 736 (1988). Defendant asserts that his presence was required at the jury view so that he could inform the jury about the changed conditions. As we stated above, the jury instruction given the previous day combined with the common sense of the jurors would achieve that result. Because defendant failed to demonstrate how he was prejudiced, we find no error. *Id.*

Defendant maintains that the trial court erred in permitting one of Kluk's coemployees to testify as a rebuttal witness. Because defendant failed to object to the admission of this evidence, this Court will review the issue only for manifest injustice. *Kelly, supra* at 281.

Rebuttal evidence is limited to refuting, contradicting, or explaining evidence presented by the other party. *People v Leo,* 188 Mich App 417, 422; 470 NW2d 423 (1991). The general rule is that the prosecutor cannot introduce evidence on rebuttal that could have been introduced in the people's case in chief. *People v Losey,* 413 Mich 346, 351-352; 320 NW2d 49 (1982).

In this case, defendant's only witnesses were his sister, brother, and nephew. Their testimony concerned defendant's alcoholism and mental deficiencies. The prosecution's rebuttal witness, Paul

Sundberg, testified about the physical layout of the Mobil station. Because the prosecutor's rebuttal evidence neither referred to evidence presented by defendant nor impeached any defense witnesses, admission of this evidence was improper.

However, admission of this evidence did not result in manifest injustice to defendant. The rebuttal evidence was almost identical to the evidence introduced in the prosecution's case in chief. Sundberg reiterated Kluk's description of the store layout. Because the jury had already heard another witness give the same information, exclusion of the rebuttal evidence would not have altered the verdict. *People v DeLeon,* 103 Mich App 225, 230; 303 NW2d 447 (1981).

Finally, defendant argues that three remarks by the prosecutor during closing argument constituted misconduct. In all three of the remarks now challenged by defendant, the prosecutor merely was responding to arguments raised by defense counsel. No misconduct occurred. *People v Simon,* 174 Mich App 649, 655; 436 NW2d 695 (1989).

In conclusion, we find that *Kelly* did not implicitly overrule *Karst.* A defendant may be convicted as an aider and abettor in a specific intent crime if he participated in the crime and either possessed the specific intent to commit the crime or knew that the principal possessed that intent. Because this knowledge element is merely a general intent requirement, defendant is not entitled to a voluntary intoxication defense. If defendant had possessed the specific intent to commit the crime, then voluntary intoxication would be available as a defense.

We also find that the trial court's failure to inform defendant that he could be present at the jury view of the crime scene did not prejudice

defendant's right to a fair trial. Although the trial court did err when it allowed Paul Sundberg to testify as a rebuttal witness, this error did not result in manifest injustice. Finally, the prosecutor's statements during closing argument did not constitute misconduct because he was only responding to the remarks of defense counsel.

Affirmed.