# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DOUGLAS MACARTHUR GUILE,

Defendant-Appellant.

UNPUBLISHED
June 9, 2015

No.   319939
Genesee Circuit Court
LC No.   02-010240-FC

---

Before:  MURPHY, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of armed robbery, MCL 750.529. He was sentenced as a second habitual offender, MCL 769.10, to 25 to 50 years' imprisonment. We affirm.

This case arises from a brutal robbery of a McDonald's restaurant on June 24, 2002, in which the perpetrator, later identified by numerous witnesses as defendant, repeatedly threatened to kill employees if they failed to comply with his demands.  Wrapping a BB gun in a towel such that only the barrel was visible to the employees, defendant brandished the weapon, referring to it as an Uzi when threatening to shoot the employees.  At one point, defendant placed the gun to the back of the restaurant manager's head while demanding money.   After leaving the McDonald's with proceeds from the robbery, defendant was confronted by an off-duty police officer who momentarily subdued defendant before a distraction allowed defendant to flee.  After refusing to comply with several demands to halt, defendant was shot in the leg by the off-duty officer during the ensuing chase.  In the midst of the foot pursuit, defendant had been able to outrun the officer and successfully climbed a six-foot fence.  Despite the gunshot wound, defendant was able to reach a vehicle he had borrowed from a friend, but he crashed soon thereafter and was apprehended by other responding police officers.  Video surveillance cameras produced footage and still photographs that, while apparently not clearly showing defendant's face, revealed that the perpetrator was dressed consistently with defendant's appearance upon arrest.

Defendant was convicted of the armed robbery by a jury and sentenced by the trial court in September 2002.  Following a denial by this Court in 2003 of a delayed application for leave to appeal, a subsequent denial by the trial court of a motion for relief from judgment brought in 2011 under MCR 6.501 *et seq.*, and a later denial by this Court of an application for leave relative to the rejected motion for relief from judgment, the Michigan Supreme Court finally

-1-

remanded the case to the trial court solely "for an evidentiary hearing and reconsideration of the issue whether the time in which to file an appeal of right should be restarted pursuant to MCR 6.428." *People v Guile*, 495 Mich 888; 838 NW2d 882 (2013).[1] After a hearing in the trial court, and upon stipulation of the parties, the court issued an order restarting the time to perfect an appeal of right, and an appeal to this Court ensued. This Court preliminarily granted defendant's motion to remand for a *Ginther* hearing[2] related to his request for a new trial predicated on a claim of ineffective assistance of counsel as to the defense of voluntary intoxication negating specific intent. *People v Guile*, unpublished order of the Court of Appeals, entered April 10, 2014 (Docket No. 319939). On remand, the trial court conducted the *Ginther* hearing and denied defendant's motion for new trial. The trial court indicated that there was strong evidence at trial that defendant's actions during the robbery were goal-oriented and did not reflect that he was intoxicated, through the consumption of drugs and alcohol, to such an extent that he could not form the requisite specific intent to commit armed robbery. The trial court further stated that defendant's trial counsel did not have to employ an expert to present an intoxication defense, given that lay witnesses were generally capable of supporting such a defense. Finally, the trial court observed that defense counsel did not commit any errors that affected the outcome of the trial; rather, it was defendant's own behavior, as demonstrated by the testimony and video, that led to his conviction. The case is now before us as of right.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that he was denied the effective assistance of counsel because defense counsel failed to properly investigate, prepare, and present the defense of lack of specific intent due to voluntary intoxication, which failures resulted in the presentation of a confusing and contradictory defense that was essentially no defense at all.

Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court, addressing the basic principles governing a claim of ineffective assistance of counsel, stated:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797

---

[1] Defendant had argued that attorney neglect and incompetence had caused the failure to file a timely appeal by right following his conviction and sentence. We also note that the citations of the two referenced orders entered by this Court are, respectively, *People v Guile*, unpublished order of the Court of Appeals, entered December 19, 2003 (Docket No. 250401), and *People v Guile*, unpublished order of the Court of Appeals, entered November 30, 2012 (Docket No. 309283).

[2] A *Ginther* hearing is an evidentiary hearing to address claims of ineffective assistance of counsel. See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

Armed robbery is a specific intent crime, which requires the prosecution to prove that the defendant intended to permanently deprive the owner of property. *People v Lee*, 243 Mich App 163, 168; 622 NW2d 71 (2000). At the time of the charged offense—June 24, 2002—voluntary intoxication was a defense to a specific intent crime. *People v Langworthy*, 416 Mich 630, 636-638; 331 NW2d 171 (1982), abrogated by 2002 PA 366 effective September 1, 2002.[3] Voluntary intoxication negated "the specific intent element of the crime charged if the degree of intoxication [was] so great as to render the accused incapable of entertaining the intent." *People v King*, 210 Mich App 425, 428; 534 NW2d 534 (1995), abrogated by MCL 768.37.

We appreciate defendant's sentiments that defense counsel presented a confusing and contradictory defense at trial, but it does not warrant reversal. In his opening statement, defense counsel essentially acknowledged that defendant was the perpetrator of the armed robbery and instead focused his opening statement on the assertion that the facts would show that alcohol and cocaine consumption had prevented defendant from forming the specific intent necessary to establish the offense of armed robbery.

During the trial, defense counsel, consistent with his opening statement, made a concentrated effort to establish the intoxication defense through cross-examination of the prosecution's witnesses, eliciting testimony from some of the witnesses that they smelled alcohol on defendant's breath. And there was testimony by a witness, one of defendant's friends, that he and defendant had binged on alcohol and crack cocaine for a day and a half prior to the robbery, but the prosecutor was somewhat successful in impeaching this witness's credibility. A crack pipe was found on defendant's person when he was arrested, and defendant made statements about being a crack head. However, despite defense counsel's efforts, all of the witnesses who

---

[3] 2002 PA 366 was codified at MCL 768.37, which provides, in general in subsection (1), that "it is not a defense to any crime that the defendant was, at that time, under the influence of or impaired by a voluntarily and knowingly consumed alcoholic liquor . . . [or] controlled substance[.]"

personally observed defendant during the armed robbery testified that defendant spoke and acted in a manner that was focused on successfully accomplishing the robbery, i.e., permanently depriving McDonald's of his property. They testified that defendant did not look dazed or confused, that he appeared to know exactly what he was doing, that he functioned just fine, that he was articulate and spoke clearly, and that overall there was nothing in the way defendant walked, moved, or talked that made the witnesses believe that defendant was intoxicated. The eyewitnesses indicated that while defendant yelled during the robbery, he was not out of control and he executed the robbery in a goal-oriented manner. Also, there was evidence that defendant had borrowed his friend's car before the robbery, that defendant was able to drive the vehicle, that defendant surveilled the inside of the McDonald's through a window before entering, and that defendant cunningly disguised the BB gun, all of which appeared to undermine the intoxication defense. Moreover, witnesses to defendant's chase and capture asserted that defendant did not have any problems with his balance while running and that he quickly and athletically scaled a six-foot fence during his flight from the off-duty police officer. The off-duty officer testified that he believed defendant understood everything being communicated to him and that defendant spoke clearly. The officer additionally testified that, through his years of experience, he had learned to smell crack cocaine on a person and he did not notice that smell on defendant, nor did defendant exhibit the signs of a person who used crack cocaine. The officer explained that defendant was "just too cool about what he was doing, he was just easy, methodical [and] . . . cautious at what he was doing." Two other police officers involved in taking defendant into custody testified that defendant did not smell of any intoxicants.

When it came to closing arguments, defense counsel, evidently convinced that the intoxication defense had effectively collapsed in light of the record that had developed during trial, reversed his focus from that reflected in his opening statement to one that now questioned whether the prosecution had presented proof beyond a reasonable doubt that defendant was the actual perpetrator.[4] There was but a cursory and awkward mention of the intoxication defense at the very end of counsel's closing argument. Of course, the jury was certainly cognizant of the fact that defense counsel had suggested, if not entirely conceded, in his opening statement that defendant was the perpetrator. But we agree with the trial court's thoughtful remarks that the debacle was not so much the result of failures or deficiencies on the part of defense counsel as it was the existence of overwhelming and virtually indisputable evidence that defendant committed the armed robbery and did so with the requisite specific intent untainted by intoxication. While perhaps the better or more reasonable trial strategy would have been to maintain the emphasis on the intoxication defense in counsel's closing argument, we cannot conclude, given the record, that defendant would probably have been acquitted had counsel employed a more consistent strategy.

The crux of defendant's argument on appeal relative to the ineffective assistance claim is that defense counsel should have called defendant's parents and other relatives to the stand to

---

[4] At the *Ginther* hearing, the parties and the court acknowledged that a few years before the hearing, defense counsel had been struck by a motor vehicle while walking and suffered a very serious head injury, which resulted in memory loss of prior events and prevented him from testifying at the *Ginther* hearing.

speak to his history of alcohol and drug abuse and, primarily, that counsel should have called an expert to testify in support of the intoxication defense.[5] Failure to call witnesses constitutes ineffective assistance of counsel only if it deprives a defendant of a substantial defense. *People v Dixon,* 263 Mich App 393, 398; 688 NW2d 308 (2004). With respect to the failure to call defendant's family members to the stand, none of them were with defendant in the days leading up to the robbery, nor were they present at the scene. While testimony by family members may have confirmed defense counsel's argument that defendant had a long history of drug and alcohol abuse, a history of such abuse is not in itself a defense to armed robbery. The evidence may have had some minimal probative value, MRE 401, but not to the extent that defense counsel's failure to call family members to testify amounted to deficient performance, nor to the extent that any prejudice resulted from the absence of their testimony. Defendant was not deprived of a substantial defense.

With respect to the argument concerning defense counsel's failure to call an expert in support of the intoxication defense, defendant relies on the opinion of a forensic and clinical psychologist who prepared a report and testified at the *Ginther* hearing in support of the defense. The expert concluded that defendant was likely extremely intoxicated when committing the armed robbery and that in such a state defendant would not have been capable of forming the requisite specific intent. The expert reviewed and relied on various materials in reaching his opinion, including the presentence investigation report (PSIR), the police report, and transcripts of some of the trial testimony, giving particular attention to the testimony of defendant's friend regarding heavy drug and alcohol use prior to the robbery. Ultimately, the foundation of the expert's opinion was primarily defendant's self-written version of the offense as set forth in an attachment to the PSIR. Defendant wrote that, for several days leading up to the robbery, he had been drinking alcohol and smoking crack cocaine almost nonstop. He claimed that he had not slept in days and was on edge because a drug dealer to whom he owed money was looking for him. Defendant maintained that this fear, coupled with the drinking, the drugs, and the lack of sleep left him tired, nervous, desperate, and confused. Defendant claimed that after being turned away by a nearby hotel, he ended up at the McDonald's and went to use the restroom to freshen up. But once in the restroom, he smoked a large piece of crack cocaine and then went into the main lobby of the restaurant "in a state of delusion and paranoia." He could not recall anything as to what transpired thereafter inside the McDonald's in relationship to the robbery, but he did remember being confronted, chased, and shot by the off-duty officer after exiting the restaurant.

Predominantly on the basis of defendant's written statement, the expert, who estimated that he had testified in court over 400 times, opined that defendant, due to extreme intoxication, had experienced a partial blackout, had a distorted perception, and was cognitively impaired. The expert was asked about defendant's "seemingly goal directed behavior" during the course of the robbery as testified to by all of the witnesses, and the expert responded, "That's common in blackouts that people behave in ways that are not noticeable to others." The expert elaborated

---

[5] We note that our continuing reference to the intoxication "defense" is not meant to suggest that defendant had any affirmative burden to establish intoxication; rather, we use the nomenclature for ease of reference, realizing that the prosecution had the burden to prove beyond a reasonable doubt that defendant had the necessary specific intent to support the armed robbery charge.

that forensic psychology recognizes "[t]hat because a person looks like they're behaving in a goal directed way doesn't mean that they're making the same kind of thoughtful problem solving judgments . . . [or] decisions[,] or [are] able to pay attention to things in the same way as someone who is not." On cross-examination, the expert conceded that he did not know how much cocaine or alcohol defendant had actually used or consumed, acknowledging that there was no scientific evidence of intoxication, such as the results of a blood alcohol test. He further conceded that many of the actions taken or statements made by defendant during and after the robbery that the expert relied on as supporting the expert's theory and opinion, e.g., not responding to clear demands of law enforcement, could also have simply reflected conduct and communications typical of a sober person committing an armed robbery and attempting to successfully escape a pursuit. The expert ultimately admitted that he could not state to a scientific certainty what defendant's intent was in 2002.

One of the problematic aspects of the expert's opinion is the reliance on defendant's written statement attached to the PSIR. The PSIR and defendant's statement were prepared after the trial, and defendant did not testify at the trial. Had an expert been called to testify at trial, we fail to see how the expert could have provided an opinion favorable to defendant based on claims and assertions made by defendant absent defendant having taken the stand and subjecting himself to cross-examination, which he chose not to do. An expert's opinion must be "based upon sufficient facts or data." MRE 702. And MRE 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence. This rule does not restrict the discretion of the court to receive expert opinion testimony subject to the condition that the factual bases of the opinion be admitted in evidence thereafter.

The expert's partial blackout theory and opinion on specific intent would not have been sufficiently supported by facts as required by MRE 702 without the introduction of evidence of claims like those made by defendant in his post-trial-PSIR version of the offense, which could only have come to fruition by defendant taking the witness stand.[6] The other evidence relied on by the expert, e.g., defendant's inaccurate reference to a person being his sister when initially subdued by the off-duty officer and defendant's vague reference at the hospital that he dreamed or worried about being stopped by an off-duty officer, did not suffice to support the expert's opinion. The expert's opinion was heavily dependent on defendant's contention that he was in a state of delusion and paranoia and, most importantly, that he could not recall committing the robbery. And it would be entirely too speculative for us to surmise that defendant would have taken the witness stand and testified had an expert been procured for trial in 2002. Indeed, defendant makes no such claim in his appellate brief. Accordingly, we cannot conclude that an

---

[6] For purposes of our analysis, we are making the assumption that either the expert hired by defendant to testify at the 2014 *Ginther* hearing would have been the expert to testify at defendant's trial in 2002 or that a different expert could have testified in 2002, but in a manner consistent with the view and opinion of defendant's present expert. The reality is that we can only speculate whether defendant in 2002 could have actually located an expert prepared to testify on defendant's behalf, even if counsel made an effort to find such an expert.

expert would have even been permitted to testify on defendant's behalf at trial, let alone conclude that defense counsel was deficient in his performance by not calling an expert to testify. Defendant has not shown that he was deprived of a substantial defense.

We further note that an expert was not a necessity in arguing the intoxication defense, considering that, for purposes of MRE 701,[7] lay witnesses are generally permitted to testify regarding personal observations of intoxicated behavior and as to their opinion concerning whether a person was intoxicated, as formed by their observations. *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988), mod in part on other grounds 433 Mich 862 (1989); see also *Heyler v Dixon*, 160 Mich App 130, 148-149; 408 NW2d 121 (1987) (a lay witness is generally permitted to testify under MRE 701 with respect to his or her opinion regarding whether a person was intoxicated). Accordingly, trial counsel's strategy to employ the testimony of lay witnesses in an effort to establish intoxication and negate specific intent was not unreasonable.

Moreover, defendant's expert, even with the benefit of defendant's version of the offense as attached to the PSIR, had to concede that he did not know how much alcohol and drugs defendant had actually consumed, that defendant's conduct and communications could be interpreted in a manner inconsistent with the intoxication defense, and that he could not state to a scientific certainty what defendant's intent had been at the time. Ultimately, the expert's opinion was overly speculative such that we cannot conclude that defendant has established deficient performance on the part of defense counsel for failing to call an expert witness to testify. Even assuming deficient performance, there was a mountain of evidence showing that defendant committed the armed robbery with the intent to permanently deprive the restaurant of its money. And defendant simply cannot show the existence of a reasonable probability that, but for counsel's assumed error, defendant would have been acquitted. Every movement made and word spoken by defendant during and after the robbery reflected an intent to permanently deprive McDonald's of its property, and there is not an adequate basis to find that defendant's use of alcohol or drugs clouded his ability to form that intent.

## II. DENIAL OF CONTINUANCE

Next, defendant contends that he was denied his right to a fair trial and due process of law when the trial court denied his request for a continuance. This Court reviews a trial court's decision on a motion for an adjournment or a continuance for an abuse of discretion. *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003). "[T]o invoke the trial court's discretion to grant a continuance or adjournment, a defendant must show both good cause and diligence." *Id.* at 18; see also MCR 2.503. In *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810

---

[7] MRE 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences that are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based in scientific, technical, or other specialized knowledge within the scope of Rule 702.

(1992), this Court observed the following with respect to determining whether a request for a continuance or an adjournment should be granted or denied:

> Some factors to be considered include whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments. Defendant must also demonstrate prejudice. [Citations omitted.]

This Court has emphasized that "[e]ven with good cause and due diligence, the trial court's denial of a request for an adjournment or continuance is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion." *Coy*, 258 Mich App at 18-19.

Here, before jury selection, defense counsel moved for a continuance so that he could retain an expert to testify about defendant's history of alcohol and crack cocaine abuse and how that impacted defendant's ability to form the necessary specific intent to commit armed robbery. Defense counsel also wished to call additional witnesses from out of state, including defendant's mother, father, and other relatives, in connection to his history of drug and alcohol abuse and failed attempts at rehabilitation. The trial court denied the motion without explanation.

Given our resolution of the first issue addressed in this opinion concerning expert and family testimony on the defense of voluntary intoxication, and based on our reasoning in rejecting defendant's arguments thereon, defendant simply cannot establish the necessary prejudice to support his continuance argument, assuming that there was good cause and the exercise of due diligence in regard to the motion.

## III. CUMULATIVE ERRORS

Defendant next contends that the cumulative effect of the errors warrants reversal, relying on the alleged errors encompassed by the arguments addressed and rejected above. "Absent the establishment of [any] errors, there can be no cumulative effect of errors meriting reversal." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). We note that the first two arguments posed by defendant in this appeal are essentially the same, with different underling theories, i.e., defendant should have had a trial in which his family members and an expert testified on his behalf, and therefore counsel was ineffective in failing to procure the witnesses and the trial court abused its discretion in not adjourning the trial so that the witnesses could be procured for a rescheduled trial. This is not truly a cumulative-error situation. Regardless, in order to reverse based on cumulative error, the underlying errors "must be of consequence." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). As indicated earlier, the underlying errors claimed by defendant were not of consequence. Reversal is unwarranted.

## IV. SCORING OF OFFENSE VARIABLES

Finally, defendant contends that the trial court erred in scoring offense variable (OV) 1, MCL 777.31 (aggravated use of a weapon), OV2, MCL 777.32 (lethal potential of a weapon used in offense), and OV 7, MCL 777.37 (substantially increasing a victim's fear and anxiety during offense). We initially note that because the 2002 armed robbery occurred after January 1, 1999, the legislative or statutory sentencing guidelines and not the prior judicial sentencing guidelines were implicated. Under the sentencing guidelines, the trial court's findings of fact are

reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013); *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014). "'Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred.'" *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012) (citation omitted). On the other hand, we review de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . ." *Hardy*, 494 Mich at 438; see also *Rhodes*, 305 Mich App at 88.

We first address OV 7, which provides for the assessment of 50 points when "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a).[8] If this provision is inapplicable, zero points are to be assessed in scoring OV 7. MCL 777.37(1)(b). In regard to OV 7, this Court has held "that the language of the statute includes situations in which there is emotional or psychological, but not physical, abuse of the victim and that actual physical abuse is not required to justify assessing 50 points for this variable." *People v Mattoon*, 271 Mich App 275, 276; 721 NW2d 269 (2006).

In *Hardy*, the Michigan Supreme Court interpreted the phrase, "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense," as used in MCL 777.37(1)(a). *Hardy*, 494 Mich at 440-444. The *Hardy* Court observed:

> [W]e agree with the Court of Appeals that "[a]ll . . . crimes against a person involve the infliction of a certain amount of fear and anxiety." Since the "conduct designed" category only applies when a defendant's conduct was designed to substantially *increase* fear, to assess points for OV 7 under this category, a court must first determine a baseline for the amount of fear and anxiety experienced by a victim of the type of crime or crimes at issue. To make this determination, a court should consider the severity of the crime, the elements of the offense, and the different ways in which those elements can be satisfied. Then the court should determine, to the extent practicable, the fear or anxiety associated with the minimum conduct necessary to commit the offense. Finally, the court should closely examine the pertinent record evidence, including how the crime was actually committed by the defendant. As noted above, evidence which satisfies an element of an offense need not be disregarded solely for that reason. Instead, all relevant evidence should be closely examined to determine whether the defendant engaged in conduct beyond the minimum necessary to commit the crime, and whether it is more probable than not that such conduct was intended to make the victim's fear or anxiety increase by a considerable amount. [*Id*. at 442-443 (citations omitted; ellipsis and emphasis in original).]

---

[8] We note that prior to April 22, 2002, OV 7 provided for a score of 50 points if "[a] victim was treated with terrorism, sadism, torture, or excessive brutality." See 1998 PA 317; 2002 PA 137. The armed robbery took place on June 24, 2002, and defendant was sentenced in September of that same year. Therefore, the most recent version of the statute, 2002 PA 137, as quoted in the body of this opinion, applied at defendant's sentencing.

The *Hardy* Court concluded that "[t]he relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Id.* at 443-444.

Here, defendant announced that he was carrying an Uzi, with the employees observing the barrel of a weapon, he pointed the weapon at the employees, he threatened multiple times to kill the employees who did not comply with his orders, and he pressed the gun against the manager's head after grabbing her and dragging her from the restaurant's office. We find that defendant's actions qualified as excessive brutality or conduct that was designed to substantially increase the fear and anxiety of the employees. Defendant's conduct was clearly intended to make his victims fear that a violent death was imminent, not just possible, and substantially increased their fear and anxiety beyond the minimum necessary to commit the crime of armed robbery. There was a preponderance of evidence supporting the 50-point score assessed by the trial court. Resentencing is unwarranted.

Defendant also argues that the trial court erred in assessing 15 points for OV 1 and 5 points for OV 2. We find it unnecessary to address these arguments. Defendant's total OV score was 120 points, placing him at level VI on the sentencing grid applicable to the class A offense of armed robbery and setting the sentencing guidelines range at 171 to 356 months.[9] MCL 777.16y; MCL 777.62; MCL 777.21(3)(a). Level VI applies to total OV scores of 100 or more points. MCL 777.62. Assuming that the 20 points assessed in total for OVs 1 (15 pts.) and 2 (5 pts.) was improper, deducting those 20 points from the 120-point total OV score would reduce the total OV points to 100, leaving defendant at OV level VI absent any change in the minimum guidelines range. "Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). Accordingly, assuming errors in the scoring of OVs 1 and 2, the guidelines range would not be altered and thus resentencing is not required.

Affirmed.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola

---

[9] This guidelines range takes into consideration the unchallenged points assessed by the court with respect to the prior record variables, as well as defendant's status as a second habitual offender.