*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TRAVIS DEE BRIMHALL,

Defendant-Appellant.

UNPUBLISHED
May 14, 2019

No. 341677
Allegan Circuit Court
LC No. 16-020456-FH

Before: GLEICHER, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

Defendant, Travis Dee Brimhall, appeals as of right his jury conviction for resisting and obstructing a police officer in violation of MCL 750.81d(2).[1] On appeal, defendant claims that (1) insufficient evidence supported the guilty verdict for resisting and obstructing; (2) the trial court improperly admitted MRE 404(b) evidence that defendant had previously resisted and obstructed a police officer; (3) the trial court improperly instructed the jury that voluntary intoxication was not a defense; and (4) defendant received ineffective assistance of trial counsel. We affirm.

## I. FACTUAL BACKGROUND

Deputy Randy Beute, a deputy sheriff with the Allegan County Sheriff's Office, was on duty, in uniform and in a marked police cruiser, and assigned to general road patrol on October 18, 2016. On that date, he responded to several 911 calls regarding "a disorderly subject that was running around naked." A 911 caller explained that her husband's uncle was "out in the road running around naked," and that she did not "know if he is OD'ing or what." She identified defendant by name and gave the dispatcher her address. In another 911 call, a woman explained

---

[1] The jury also convicted defendant of indecent exposure in violation of MCL 750.335a, and obscene conduct in violation of MCL 750.167(1)(f). Defendant does not challenge those convictions.

that, less than a minute previously, there had been "a guy running down the street with his pants down to his ankles grabbing himself, chasing after vehicles." This second caller said that the man "had his pants literally down to his ankle, grabbing himself, chasing after a truck," and that the caller's 8-year-old daughter had also seen the man.

When he arrived at the scene, Beute saw two men, one of whom was standing and the other "was laying down, partially in the roadway" on his stomach. Beute identified defendant as the man lying down. The other man, who identified himself only as Jessie, indicated to Beute that defendant was the individual who was previously running around naked. Beute knelt down next to defendant in order to ask him what assistance was necessary.

While awaiting medical personnel and emergency backup, defendant "did kind of become twitchy" and "completely flip flopped from his stomach to his back." At that time, Beute "made the decision that [he] was going to place [defendant] into protective custody" because "[t]here was still a pending investigation that needed to take place with regards to the obscenity that had been called into dispatch." Accordingly, Beute "tried to get [defendant] to roll back over onto his stomach where [the deputy] could place handcuffs on him behind his back and restrain him until further help arrived." In response, defendant "shouted, 'no', very intelligibly" and "began pulling away and flipped back over onto his back again." At that point, the deputy had only attached one handcuff and did not "want to lose control of a loose handcuff." Beute testified that he therefore tried to get defendant into a position where he "would be able to effectively handcuff him, restrain him behind his back," but defendant continued "to pull away and just resisted those efforts." Beute also recalled defendant "saying something about it being a long night, or it's going to be a long night."

During the process, Beute kept telling defendant to go back on his stomach, but defendant failed to comply. Before Beute could completely handcuff him, defendant "jumped up" and the deputy knew that he "was losing grip." At that point, defendant "started coming directly at" Beute, who warned defendant, who was about two arms' lengths away, that he would use his taser if defendant continued. The deputy testified that he "could visually see [defendant's] muscles tense" and that he "feared that [defendant] was going to jump back up again," so Beute deployed his taser. Beute was eventually able to subdue and handcuff defendant.

Beute suffered several physical injuries during the altercation with defendant, including a large gash to his right knee, a minor abrasion to his left knee, and further injuries to his hands. He obtained treatment at the local hospital for these injuries and, subsequently, underwent surgery for torn cartilage in his shoulder that had resulted from the altercation with defendant. Deputy Phil Arnsman of the Allegan County Sheriff's Office testified that defendant admitted during the ambulance ride to the hospital that he had taken an ounce of mushrooms and two to four hits of acid, and that he "needed help with his drug use." The prosecution played a video recording taken by a bystander of the latter portion of the police encounter and also played a final 911 call during which the caller opined that defendant needed "to stop getting tased because they are going to kill him." The prosecution also presented photographs of Beute's injuries. Defendant did not call any witnesses and rested his case. The following day, the jury found defendant guilty of all three charges. Defendant now appeals.

II. "PROTECTIVE CUSTODY"

-2-

Defendant asserts that "there was no lawful authority for [Beute] to handcuff [defendant] under the circumstances of the case." Defendant provides little clarification of this assertion, much of which pertains to his intoxication or unconsciousness. However, even though defendant has not clearly asserted it, we are concerned by Beute's decision to take defendant into "protective custody." We have not been provided with any explanation of what "protective custody" is supposed to be, but as a practical matter, we construe it as indistinguishable from placing defendant under arrest.[2] Beute admitted that he never saw defendant with his pants down; therefore, the record appears to indicate that Beute never personally observed defendant commit any crime until *after* Beute attempted to arrest defendant. This is critical, because all persons enjoy a longstanding and well-established absolute right to resist unlawful conduct committed by a police officer. See *People v Clements*, 68 Mich 655, 658; 36 NW 792 (1888); *People v Krum*, 374 Mich 356, 361; 132 NW2d 69 (1965); *People v Moreno*, 491 Mich 38, 40-41, 50-51, 57-58; 814 NW2d 624 (2012). If Beute's de-facto arrest of defendant was unlawful, defendant cannot have committed the crime of resisting and obstructing by refusing to comply, because as a practical matter, defendant would merely have been defending himself from an assault.

Nevertheless, we must conclude that it was lawful for Beute to effectuate an arrest of defendant, whether or not Beute was aware of it. "For an arrest to be lawful, the police officer making the arrest must have probable cause, either that a felony or misdemeanor was committed by the individual in the officer's presence, or that a felony *or specified misdemeanor* (i.e., a misdemeanor punishable by imprisonment for more than 92 days) occurred outside the officer's presence and that the individual in question committed the offense." *People v Vandenberg*, 307 Mich App 57, 69; 859 NW2d 229 (2014) (emphasis added). Obscene conduct, MCL 750.167, is punishable by imprisonment for not more than 90 days. MCL 750.168. However, indecent exposure is punishable by either not more than 1 year or not more than 2 years. MCL 750.335a. Consequently, indecent exposure is a "specified misdemeanor," arrestable upon probable cause even if committed outside the arresting officer's presence. The evidence in the record amply supports Beute having had probable cause to believe that defendant had committed indecent exposure shortly before Beute arrived on the scene. Therefore, although we do not understand the nature of "protective custody," Beute was lawfully permitted to arrest defendant.

### III. SUFFICIENCY OF EVIDENCE

Defendant first argues that there was insufficient evidence to support his conviction of restricting and obstructing. We disagree.

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). However, despite that de novo standard, we are obligated to defer to any fair and reasonable inference or credibility assessment in favor of the

---

[2] Not every act of handcuffing a person necessarily constitutes an arrest. See *People v Green*, 260 Mich App 392, 397-398; 677 NW2d 363 (2004), overruled on other grounds by *People v Anstey*, 476 Mich 436, 447 n 9; 719 NW2d 579 (2006). However, Beute's intent of taking defendant into custody, "protective" or otherwise, indicates that Beute was effectuating an arrest.

jury's verdict. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). Our role is only to determine whether a rational trier of fact could have found defendant guilty beyond a reasonable doubt. *Id*. Although the jury may not speculate, the jury may pick and choose which evidence to accept or reject. *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883); *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996). Even where the standard of review is otherwise de novo, we defer to the trier of fact's superior ability to observe witnesses and evaluate their credibility. See *In re Loyd*, 424 Mich 514, 535; 384 NW2d 9 (1986).

To convict a defendant of resisting or obstructing a police officer pursuant to MCL 750.81d(2), the prosecution must establish that:

> (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties. [*People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (quotation marks and citation omitted).]

The prosecution must also prove that defendant's conduct caused bodily injury or required medical care or attention. See MCL 750.81d(2). Finally, "the prosecution must establish that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d." *Id*. at 492; *Vandenburg*, 307 Mich App at 68-69 (stating that "the lawfulness of the arrest was an element of the offense, and it presented a factual question for the jury"). A lawful arrest generally requires probable cause. *Id* at 69.

Viewed in the light most favorable to the prosecution, the evidence was sufficient to support defendant's conviction. At trial, the jury heard evidence from Beute and several other witnesses concerning defendant's behavior and the lengthy altercation between defendant and the deputy. The jury also independently viewed a video of the police encounter. The record unambiguously provides ample evidence that Beute was injured in the incident. We are also satisfied that the jury could have found beyond a reasonable doubt that defendant knew or should have known that Beute was a police officer performing his duties. Although Beute was not sure whether he explicitly identified himself, he arrived in a marked police cruiser and fully uniformed. Moreover, it was defendant's own family member who, fearing defendant was overdosing, initially called law enforcement to the scene; significantly, the video also revealed that defendant's own family members and others present implored defendant to obey Beute's commands. It is a fair and reasonable inference that defendant was aware that Beute was a police officer performing his duties.

Finally, the evidence is sufficient to show that Beute was acting lawfully. Beute testified that he responded to several emergency 911 calls that stated that defendant was walking down a public street with his pants at his ankles, fondling himself. When he arrived on scene, Beute was able to quickly and accurately identify defendant as the suspect. According to Beute's testimony, defendant "was laying down, partially in the roadway." As noted, defendant does not challenge his convictions for indecent exposure or disorderly conduct, and the evidence in the record certainly shows that Beute had probable cause to believe that, in fact, defendant was committing or had just committed the crimes of indecent exposure and disorderly conduct. See

*Vandenburg*, 307 Mich App at 69. Furthermore, it appears that Beute initially decided not to take defendant into custody in favor of awaiting medical attention, and Beute only decided to place defendant into custody when it appeared defendant would not stay where he was. As discussed, indecent exposure is a "specified misdemeanor" for which defendant could lawfully be arrested on probable cause, even though the crime was committed outside Beute's presence. The jury could reasonably conclude that Beute acted lawfully.

Defendant finally contends that he "was unconscious for a significant portion of law enforcement conduct," and, therefore, that he did not act voluntarily and is not criminally liable. There is ample evidence that defendant's mental state was poor, likely due to the drugs he had ingested. However, voluntary intoxication is not a defense to a general-intent crime. *People v Abramski*, 257 Mich App 71, 73; 665 NW2d 501 (2003); *People v King*, 210 Mich App 425, 431; 534 NW2d 534 (1995). Furthermore, Beute testified that defendant appeared sufficiently lucid to comprehend what was happening, including clearly yelling "no" and stating that "it's going to be a long night," implicitly suggesting that defendant understood that his conduct would have consequences. As noted, the jury was able to observe at least some of defendant's behavior for itself. It is not implausible that a taser shock could cause uncontrollable flailing, but defendant's statements and attempt to approach Beute suggest that defendant was not simply undergoing shock-induced muscle spasms. We therefore reject defendant's unconsciousness defense.

## IV. ADMISSION OF EVIDENCE

Next, we consider defendant's challenge to the admission of evidence under MRE 404(b) that, several months before, he had resisted and obstructed the police in another matter involving intoxication. This Court reviews a trial court's evidentiary decision for an abuse of discretion. *People v Danto*, 294 Mich App 596, 599; 822 NW2d 600 (2011). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*. We hold that the trial court did not abuse its discretion.

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MRE 404(b) is a rule of inclusion: all evidence is generally admissible, even if it bears on a defendant's behavior, unless it has no relevance to anything *other* than the defendant's character or propensity. *Danto*, 294 Mich App at 599. Furthermore,

> [a]ll relevant evidence is prejudicial; only unfairly prejudicial evidence may be excluded. *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). "Unfair prejudice exists when there is a tendency that evidence with little

probative value will be given too much weight by the jury." *Id*. at 614. Unfair prejudice may arise where considerations extraneous to the merits of the case, such as jury bias, sympathy, anger, or shock, are injected. *Id*. [*Danto*, 294 Mich App at 600.]

The trial court is obligated to "closely scrutinize the logical relevance of the evidence" and "weed out character evidence that is disguised as something else." *People v Crawford (On Remand)*, 325 Mich App 14, 23; 923 NW2d 296 (2018), vacated in part on other grounds by ___ Mich ___ (2019) (quotation marks and citation omitted). "[W]hen other acts are offered to show *intent*, logical relevance dictates only that the charged crime and the proffered other acts are of the same general category." *Id*. at 25 (quotation marks and citation omitted).

Neither party cites any cases involving an identical fact pattern to the instant matter. However, in a case involving driving while intoxicated, it was proper to admit a prior incident of the same to show that the "defendant knew that heavy drinking could lead to a blackout, and that a blackout could lead to defendant's driving without any understanding of what he was doing." *People v Werner*, 254 Mich App 528, 539-540; 659 NW2d 688 (2002). Moreover, "[t]he fact that such an episode occurred only three weeks before the charged offense was highly material to the proper purpose of showing defendant's knowledge of the dangers of driving while intoxicated." *Id*. at 540. In this case, the two similar incidents were only three months apart and both consisted of defendant resisting a law enforcement officer's commands while intoxicated. These two incidents were logically relevant to demonstrating defendant's knowledge and absence of mistake, factors placed directly in issue by defendant's theory of the case, which focused on defendant's inability to recognize or understand the police officer. See *Werner*, 254 Mich App at 539-540. Although somewhat prejudicial, the previous encounter was highly material and probative toward showing defendant's knowledge, intent, and absence of mistake when encountering a police deputy. See *Danto*, 294 Mich App at 600.[3] The trial court did not err by admitting the evidence.

## V. VOLUNTARY INTOXICATION

Defendant also challenges the trial court's jury instruction that voluntary intoxication was not a defense. "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 420-421; 884 NW2d 297 (2015) (quotation marks and citation omitted). Use of the model criminal jury instructions is mandatory if the instruction is applicable, accurate, and requested. See MCR 2.512(D)(2); *People v Rosa*, 322 Mich App 726, 739; 913 NW2d 392 (2018). The prosecution requested, and the trial court read, M Crim JI 6.1. Doing so was proper: voluntary intoxication is

---

[3] Even if we were to conclude that the trial court abused its discretion in admitting testimony relating to defendant's previous police encounter, the error was harmless because it did not undermine the reliability of the verdict. See *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999). Other evidence independently supported the conviction, including testimony from Beute concerning his altercation with defendant, the testimony of several witnesses concerning defendant's behavior, and a video recording of the police encounter.

not, in fact, a defense to resisting and obstructing a police officer unless the defendant "consumed a legally obtained and properly used medication or other substance and did not know and reasonably should not have known that he or she would become intoxicated or impaired." See MCL 768.37. Defendant has shown no evidence that the exception applies. The instruction was requested, applicable, and accurate, so the trial court did not err. See *People v Henry*, 239 Mich App 140, 147-148, 150; 607 NW2d 767 (1999); *Rosa*, 322 Mich App at 739.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that his trial counsel was ineffective for (1) failing to argue that law enforcement's actions were unlawful, (2) failing to request an instruction that the prosecution had to prove that defendant's physical acts were voluntary, and (3) failing to object to the jury instruction that voluntary intoxication was not a defense. Because defendant failed to move for a new trial or for a *Ginther*[4] hearing, this Court's review is limited to mistakes apparent on the record. See *People v Sabin (On Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Defendant must establish that counsel's performance was objectively unreasonable and that counsel's errors likely affected the outcome of the trial. *People v Pennington*, 323 Mich App 452, 460; 917 NW2d 720 (2018). We find no merit in defendant's contentions.

In reverse order, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). As discussed, voluntary intoxication is *not* a defense except under a single, narrow circumstance obviously not present here. It would have been meritless and futile for counsel to have requested an instruction contrary to the law. Defense counsel's failure to request an instruction that voluntary intoxication was a defense did not constitute ineffective assistance.

We are unpersuaded that counsel was ineffective for failing to request an instruction that the prosecution must prove defendant's physical reactions to have been voluntary. We are unaware of any such jury instruction, and defendant not offered one. Defendant cites *People v Likine*, 492 Mich 367; 823 NW2d 50 (2012), which states that "[j]ust as a defendant cannot be held criminally liable for committing an act that he or she was powerless to prevent, so, too, a defendant cannot be held criminally liable for failing to perform an act that was genuinely *impossible* for the defendant to perform." *Likine*, 492 Mich at 399 (emphasis in original). *Likine* did not impose any burden of proof on the prosecution, and in any event it involved charges of failing to pay child support, so it holds no relevance to this case. We are not persuaded that there would have been any merit to requesting an instruction that the burden was on the prosecution to prove voluntariness, so counsel was not ineffective for failing to do so.

Finally, defendant argues that he was deprived of a substantial defense because counsel did not properly argue that defendant's level of intoxication affected his criminal culpability. However, the record is replete with instances where defense counsel, throughout the short one-day trial, pursued a defense strategy focused on defendant's unconscious state and his inability to

---

[4] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

recognize or respond consciously to Beute's commands. Furthermore, as already discussed, Beute's actions were lawful. Therefore, it would have been futile for defendant's trial counsel to argue that the deputy's actions were unlawful. Even if there was some doubt about the propriety of Beute's actions, we would not be persuaded that it was an unsound trial strategy to focus on defendant's relative level of consciousness rather than risk offending or confusing the jury by attacking Beute. See *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012) ("We give defense counsel wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case."). We will not substitute our own judgment of trial counsel's strategy or assess trial counsel's competence only with the benefit of hindsight. See *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Finally, we note that, even assuming that trial counsel provided ineffective assistance of counsel for one or more of the argued reasons, defendant has not overcome the heavy burden to demonstrate that, absent the error, the outcome of the defendant's trial would have been different. See *Pennington*, 323 Mich App at 460.

## VII. CONCLUSION

The trial court did not err when it found the evidence of resisting and obstructing sufficient to convict defendant, and it did not err by allowing evidence of a prior similar incident. Further, the trial court properly instructed the jury that voluntary intoxication was not a defense. Finally, defense counsel's performance did not fall below an objective standard of reasonableness, and was therefore not ineffective. Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien

-8-